Elaine Pittman and Bennie Pittman were divorced pursuant to a decree journalized on November 29, 1996, following a contested trial which occurred in February 1996. They had been married since 1977 and had two children as issue of the marriage. Ms. Pittman was named residential parent of the parties' children and Mr. Pittman was ordered to pay child support as mandated by child support guidelines.
Despite the fact that the parties' marriage was one of long duration, and that Mr. Pittman's income substantially exceeded Ms. Pittman's income, no spousal support was ordered. The decree ordered distribution of the parties' net marital assets of approximately $400,000, including retirement benefits and real estate.
Since a significant portion of the marital assets were deemed nondivisible, including approximately $248,000 of Mr. Pittman's retirement benefits, the court awarded most of the other marital assets to Ms. Pittman. These orders required the sale of four parcels of real estate, with the proceeds going to Ms. Pittman. The record indicates that even after the sale of the properties, Mr. Pittman would have received approximately $97,000 more than Ms. Pittman. Accordingly, the trial court ordered Mr. Pittman to pay his former wife approximately $48,500, at the rate of $500 per month, plus statutory interest, starting January 1, 1997.
The trial court's disposition of the real estate required the parties to retain a real estate agent and list the properties for sale immediately. The court also ordered Mr. Pittman to pay within thirty days the cost of any repairs necessary for the sale; however, he was to be reimbursed those costs from the proceeds of the sale. Mr. Pittman was further ordered to pay the respective mortgage payments until the sale occurred; in turn, he was entitled to receive any and all rental income received thereon.
No appeal was taken by either party from the trial court's orders entered in the judgment entry-decree of divorce.
On April 4, 1997, Ms. Pittman filed a motion seeking a finding that her former husband was in contempt of court due to his failure to pay child support and medical expenses; his failure to list certain real properties for sale; his failure to make monthly payments due her as a part of the property distribution; and, his failure to transfer certain bank accounts to her. Following a hearing in June 1997, Mr. Pittman was found in contempt of court and sentenced to thirty days in jail. The jail sentence was suspended on the condition that Mr. Pittman purge his contempt by transferring the bank accounts, bringing his monthly payments and child support current, and by listing the properties for sale within thirty days.
Citing Mr. Pittman's continued failure to comply with terms of the decree related to the property distribution, Elaine Pittman filed another contempt motion in April 1998. Ms. Pittman alleged in an affidavit that Mr. Pittman failed to comply with the trial court's orders in the following specifics, most of which were the subject of the first contempt action: his failure to make monthly payments due her; his failure to transfer the balance of bank account funds awarded to her; his failure to make the mortgage payments on and repairs to the remaining parcel of real estate on Maize Road; and his interference with the court-ordered sale of that property.
Following a hearing before the trial court on September 1, 1998, Mr. Pittman was again found to be in contempt. An entry was journalized October 6, 1998. The trial court sentenced Mr. Pittman to sixty days in jail but suspended the sentence on the condition that he strictly comply with the decree's terms. The trial court expressly indicated that, upon noncompliance, the sixty-day term would be imposed in addition to the earlier thirty-day term ordered. The trial court also appointed a special master to facilitate the sale of the Maize Road property and ordered Mr. Pittman to deposit $2,000 to pay the fees of the special master. In addition, Mr. Pittman was ordered to pay his former wife approximately $2,300 for attorney's fees incurred by her as a result of her pursuing the second contempt motion.
 Bennie Pittman (hereinafter "appellant") has timely appealed, assigning four errors for our consideration:
 I. The Trial Court erred to the prejudice of Appellant and abused its discretion when it found Appellant in contempt of court based upon allegations not raised in Appellee's Motion for Contempt and specifically excluded by the Trial Court prior to adducing evidence.
 II. The Trial Court erred to the prejudice of Appellant by denying him due process of law in finding him in contempt upon grounds not contained in Appellee's motion and which the Trial Court did not include as grounds prior to the commencement of the presentation of the evidence.
 III. The Trial Court erred to the prejudice of Appellant in appointing a special master, ordering Appellant to pay for "any necessary" repairs, and awarding attorneys' fees to Appellant [sic].
 IV. The Trial Court erred to the prejudice of Appellant and abused its discretion when it found Appellant in contempt based upon allegations that were disproved by the Appellant.
Preliminarily, appellant attempts to assert that the original property distribution was unfair. This issue is not before the court.
Secondly, appellant cites to places in the transcript where the trial judge purportedly makes derogatory comments regarding appellant, repeatedly alluding to the judge's alleged bias against him. We view the comments of the trial judge as an understandable expression of reasonable frustration caused by appellant's disregard of the court's orders.
Because appellant's fourth assignment of error is potentially dispositive of the balance of the claimed errors, we address it first. The substance of his argument is that the trial court's factual findings which comprise the bases for the contempt were against the manifest weight of the evidence. In addressing this assignment of error, we must determine whether the record contains competent, credible evidence to support the trial court's findings that appellant's conduct was in violation of the prior court orders. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
Based on the state of the record before us, as detailed above, there is ample competent, credible evidence to support the contempt finding. Nearly two years after the decree was filed, appellant had failed to comply with the trial court's orders. A review of the hearing transcript reveals that, while appellant attempted to offer various excuses and explanations for his noncompliance, most of his own testimony corroborated his former wife's allegations.
The record establishes that appellant had failed to make the required property settlement payments; had failed to transfer all bank accounts; had failed to make repairs to and mortgage payments on the Maize Road property; and, had not only failed to cooperate with listing the property for sale, but also had interfered with any such attempt. All of these actions, or inactions, by appellant were readily established by objective evidence in the form of both testimony and documentation.
The fourth assignment of error is overruled.
 Appellant's first and second assignments of error raise a common issue; therefore, we address these assignments of error jointly. Appellant argues that the trial court abused its discretion by finding appellant in contempt.
Courts have long held that the term "abuse of discretion" amounts to more than a mere error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Guess v. Guess (Feb. 26, 1998), Franklin App. No. 97APF08-1112, unreported (1998 Opinions 386, 389), citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Appellant asserts that he was denied due process by the trial court's making contempt findings based upon allegations purportedly not raised in the contempt motion and "specifically excluded" by the trial court prior to the hearing. He cites R.C.2705.03, which governs contempt proceedings, to support his claim that he was not given sufficient notice of the contempt charges against him. R.C. 2705.03 provides, inter alia, that in cases alleging an R.C. 2705.02 contempt of court, the accused shall have written notice of the allegations and an opportunity to be heard on such charges.
Specifically, appellant claims that he did not have notice of the elements of the contempt charges relating to his failure to list the Maize Road property for sale. Thus, he submits that the trial court improperly found him in contempt on issues exceeding the scope of the hearing. This claim lacks merit.
When Ms. Pittman filed the present contempt action, the documents necessarily included an affidavit detailing her specific accusations. Appellant was personally served with the contempt papers. Read collectively, the motion and affidavit clearly charge appellant with failure to abide by the court's orders as to the Maize Road property.
Although the hearing was originally scheduled for hearing on June 30, 1998, the actual hearing did not occur until September of 1998, following two continuances. When the hearing finally did take place, appellant had ample opportunity to present evidence and to be heard on all relevant matters.
The transcript simply does not support appellant's argument that the trial court improperly considered evidence regarding the problems with the sale of the property after the court had purportedly excluded the issue. As noted by appellee, the transcript demonstrates that both parties' counsel communicated at length with the trial judge before the hearing on the issue of the property not having been listed. Defense counsel made no objection as to the subject matter. (Tr. 15-20.) The transcript further fails to reveal objections by defense counsel when appellee testified at length regarding the real estate. The issue of the Maize Road property was litigated by agreement of the parties after appellant was apprised of the issue through the motion with its accompanying affidavit.
The first and second assignments of error are overruled.
 Finally, in his third assignment of error, appellant takes issue with the trial court's ultimate disposition of the case upon finding him in contempt. Appellant challenges the remedies ordered by the trial court: the appointment of a special master to facilitate the sale of the property, and the concurrent order that appellant deposit $2,000 for the special master's fees; the order requiring him to pay for repairs to the property; and the award of attorney's fees to appellee.
The trial court committed no error in making its remedial orders. In fact, the actions and inactions of appellant left the trial court few realistic options to ensure compliance with its orders. Again, this second contempt hearing, raising nearly identical issues as the first, occurred two years after the decree was filed. The trial court properly availed itself of the Civ.R. 70 appointment of a special master, who was appointed simply to effectuate the original orders of the trial court pertaining to the repair and sale of the property. In fact, Civ.R. 70 contemplates a situation precisely like the one before us. The rule provides, in pertinent part:
 If a judgment directs a party to execute a conveyance of land, to transfer title or possession of personal property, to deliver deeds or other documents, or to perform any other specific act, and the party fails to comply within the time specified, the court may, where necessary, direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. * * * The court may also in proper cases adjudge the party in contempt. * * * (Emphasis added.)
Further, the trial court acted well within its broad discretion in the awarding of fees. Both the attorney's fees and special master's fees ordered by the trial court were the direct result of appellant's contemptuous behavior. As stated by this court in Sateren v. Sateren (Apr. 20, 1995), Franklin App. No. 94APF10-1561, unreported (1995 Opinions 1666, 1670), a domestic relations court may award "reasonable attorney's fees to a party who has had to file a contempt action in order to receive the benefits of a court order or decree * * *."
The remedies ordered by the trial court were reasonable and fully within its sound discretion. Accordingly, the third assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
LAZARUS, P.J., and DESHLER, J., concur.